Defendant-appellant, Jeremy M. Schmitter, was tried by jury in the Madison County Court of Common Pleas and found guilty of burglary with a gun specification and receiving stolen property. We affirm.
At the time of the alleged offense, Schmitter was nineteen years of age and lived with his girlfriend, Nicole Skaggs, in a trailer located in Pickaway County near Mt. Sterling, Ohio. According to the evidence, Schmitter and a friend, Michael Aldrich, planned to burglarize the home of Ray Reynolds, which was located in Madison County. Aldrich had previously dated Julie Jones, who was a stepdaughter of Reynolds, and he had been in the Reynolds home on many occasions.
The evidence is susceptible to the jury finding that Aldrich and Julie Barnett spent the night with Schmitter in Pickaway County and that Skaggs woke everyone up the next day before she went to school. Thereafter, Schmitter, Aldrich and Barnett went to the Reynolds' residence in Schmitter's Blazer. They found the door unlocked and proceeded to grab "all kinds of stuff" before returning to Schmitter's trailer where they unloaded the fruits of their crime. Subsequently, Schmitter and Aldrich proceeded to the residence of Terry Chamberlain, which was located in Pickaway County, to sell anything he would buy from them.
After the principal participants in the burglary were apprehended, the authorities heard a variety of stories, but Aldrich finally admitted that he and Schmitter planned the burglary and broke into the Reynolds home.
Schmitter was indicted for burglary with a gun specification and receiving stolen property. After a jury trial, Schmitter was found guilty. From his conviction, Schmitter has set forth three assignments of error, the first of which has been framed in the form of a question as follows:
 Did the trial court commit prejudicial error in its charge to the jury?
In support of the alleged error, Schmitter's initial complaint revolves around the instruction of the trial court that he could be found guilty as either a principal offender or an aider and abettor, but the facts of this case bring him squarely within the language of the complicity statute. R.C.2923.03. Schmitter participated in the planning, the execution and the completion of the burglary and his involvement rendered him guilty whether he participated as a principal or as an aider and abettor. See State v. Tumbleson (1995), 105 Ohio App.3d 693,697. See, also, R.C. 2923.03(F).
Schmitter further challenges the propriety of the charge of the trial court as it relates to the offense of receiving stolen property. Specifically, Schmitter questions whether such crime was properly venued in Madison County. The venue statute, R.C. 2901.12(C), states that when the offense involves the unlawful taking or receiving of property, the offender may be tried in any jurisdiction from which or into which the property was taken. Moreover, venue is proper if "any element" of the crime was committed in the territory of any court having jurisdiction of the subject matter. R.C. 2901.12(A); State v.Headley (1983), 6 Ohio St.3d 475.
Schmitter argues that if the jury believed his testimony, he was never in Madison County. However, the state's evidence was susceptible to a reasonable finding that the stolen property was received in Madison County and taken from Madison County. Hence, Schmitter's argument is without merit.
In connection with the first assignment of error, Schmitter also contends that R.C. 2901.12(C) is unconstitutional because the "receiving" of the property occurred in Pickaway County. However, even assuming that the stolen property was not received in Madison County and placed in Schmitter's Blazer and driven to Pickaway County, there appears to be no doubt, within the meaning of the venue statute, that the stolen property was "taken" from Madison County to Schmitter's trailer in Pickaway County. In neither event does the receiving and taking of property across county lines in any way conflict with the provisions of Article I, Section 10 of the Ohio Constitution which simply provides that the party accused shall be allowed a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed.
Thus, we find no merit in Schmitter's allegation that his conviction for the offense was unconstitutional under the provisions of R.C. 2901.12(C). As a whole, therefore, the instructions of the trial court were fair, clear, and complete. Accordingly, the first assignment of error, in all of its parts, is overruled.
The second assignment of error presents the following inquiry:
 Did the court commit prejudicial error when it imposed a gun specification sentence?
As indicated, Schmitter and Aldrich both removed various items of personal property from the Reynolds house, including firearms, and Schmitter agrees that an aider and abettor is subject to the gun specification. Therefore, this alleged error is subject to the same infirmities discussed under the first assignment of error.
Under this assigned error, Schmitter also asks whether R.C.2929.14 and 2941.141 are unconstitutional, but this argument was not raised with any degree of specificity in the common pleas court. Hence, this issue must be deemed to have been waived unless plain error is shown "or where the rights and interests involved may warrant" consideration of the constitutional question.[1] In re M.D. (1988), 38 Ohio St.3d 149,151. In any event, as we understand Schmitter's argument concerning the constitutionality of R.C. 2929.14 and R.C.2941.141, his waiver in the trial court does not appear to have been of any critical significance. Accordingly, the second assignment of error lacks merit and is overruled.
The third assignment of error has been presented as follows:
 Did the trial court commit prejudicial error when it denied the defendant the opportunity to prepare for a sentencing hearing?
Schmitter argues that by sentencing him immediately after the verdict, the trial court ignored the mandate of R.C. 2929.19. We disagree. R.C. 2929.19 provides, in part, as follows:
 The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted or pleaded guilty to a felony * * *. At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative * * * and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case.
Despite Schmitter's assertions to the contrary, a plain reading of R.C. 2929.19 shows that the trial court generally has no obligation to suspend sentencing unless probation is to be imposed. See State v. Cyrus (1992), 63 Ohio St.3d 164.[2] In the case of a sentence of probation, sentencing would necessarily be delayed because a presentence report is mandatory. Id. See, also, Crim.R. 32.2. Since probation was not at issue, the trial court was within its discretion to hold the sentencing hearing immediately after the verdict. Thus, the third assignment of error is overruled.
WALSH, J., concurs.
KERNS, J., concurs in part and dissents in part.
[1] As an example, the Supreme Court of Ohio cited a constitutional challenge in a death penalty case. See State v.Zuern (1987), 32 Ohio St.3d 56, 63, certiorari denied (1988),484 U.S. 1047, 108 S.Ct. 786.
[2] Another exception is if the victim must be notified in order to make a statement prior to sentencing. See R.C. 2930.14. See, also, R.C. 2930.13 and 2947.051.